NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0502n.06
Filed: July 19, 2006

No. 05-5641

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| RONNIE TRAVIS RAY, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:    DAUGHTREY and COLE, Circuit Judges; and GRAHAM, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**    Defendant-Appellant Ronnie Travis Ray was convicted by a jury on five counts of conduct involving child pornography, all in violation of 18 U.S.C. §§ 2251(a), 2252(a)(1), and 2252(a)(4)(B). He appeals his conviction on four of those counts on the ground that Congress was not authorized under the Commerce Clause to enact the two federal criminal statutes underpinning the convictions. Ray argues that we should reverse his conviction on the fifth count on the ground that there is insufficient evidence to support the conviction. Ray also argues that the trial court erred in admitting evidence, including testimony regarding his sexual activity with a minor not mentioned in the indictment. Finally, Ray appeals the district court's sentence, which exceeded the outer limit of the Guidelines range by twenty-five years, as

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

unreasonable under *United States v. Booker*, 543 U.S. 220 (2005). For the following reasons, we affirm Ray's convictions on all five counts, but vacate the district court's judgment of sentencing, and remand to the district court for resentencing.

**I.**

On January 20, 2004, a federal grand jury in the Western District of Tennessee returned a five-count indictment charging Ronnie Travis Ray with: (1) one count of possessing a computer, a computer disk, and photographs, all of which contained child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); (2) one count of transporting and shipping child pornography in interstate commerce by means of his computer, in violation of 18 U.S.C. § 2252(a)(1); and (3) three counts of sexually exploiting two minors, Angela T. and Jennifer M., by coercing said minors to engage in sexually explicit activity for the purpose of producing child pornography, in violation of 18 U.S.C. § 2251(a). Before the trial began, defense counsel filed a motion *in limine*, seeking to exclude from evidence pictures taken by Ray of any juvenile not specifically referred to in the indictment and facts regarding his alleged sexual relationship with a juvenile not referred to in the indictment, which the district court denied.

During the trial, which began on October 12, 2004, both Angela T. and Jennifer M. testified. Angela testified that she met Ray when she was a minor, age sixteen, and her friend took her to Ray's house to smoke marijuana. She testified that she went to Ray's apartment more than 200 times between October 2002 and January 2004. Angela stated that Ray knew she was in high school during that period of time, because he would pick her up from school. Ray's two children, between the ages of two and five, were with Ray in his apartment "all the time." She testified that although

Ray sometimes made drugs and alcohol available to her, both substances were always accessible by everyone in the apartment. Angela testified that many of her friends spent time at Ray's apartment.

Angela also testified that Ray's business was to apply tattoos and piercings in the bedroom of his apartment. Ray applied a number of tattoos (back, neck, hip and foot) and piercings (nipples, navel, tongue, eyebrow and genitalia) on and about Angela's body, and photographed each one of them. Angela testified that Ray had a computer in his bedroom, with internet access and America Online ("AOL") service. She testified that the people who spent time in Ray's apartment had free access to Ray's computer at all times. According to Angela four other girls spent time at Ray's apartment: of the girls, Jennifer M. was younger than Angela; Stephanie turned eighteen during the period in which they spent time at Ray's apartment; another Stephanie turned eighteen around the time of the trial; and Nicole was fifteen at the time of the trial.

In addition to photographing her tattoos and piercings, Angela testified that Ray took pictures of her naked on a bed, and of her and another girl "playing around in dresses and stuff." She testified that after Ray had the pictures developed at a Walgreen's Drug Store, he showed them to the girls. Ray kept some of the pictures in a night-stand by his bed, but kept the pictures of the tattoos and piercings in a separate photo album. Upon questioning at trial as to whether photographs of her were in a stack of pictures, Angela identified herself in fifty-eight pictures, all of which had been taken by Ray. Angela twice spent the night in Ray's apartment; on one occasion she slept in his bed with Jennifer M., and another time she slept on the floor. Angela also testified that a girl named Kristen performed oral sex on Ray. Angela testified that Kristen was younger than she was.

Jennifer M. also testified. Jennifer said she met Ray at the age of fifteen, when she went to his house to get her first tattoo. She testified that she told Ray she was fifteen. Ray photographed her tattoo, and showed her the picture. She testified that two weeks after she was tattooed, she began returning to Ray's house everyday, and was in Ray's apartment approximately fifty to sixty times between June 2003 and "two weeks before he got caught."[1] She spent her time there "hanging out with [her] friends," naming many of the people identified by Angela. She testified that several of the girls were under eighteen at that time.

Jennifer testified that Ray tattooed her back, wrist and shoulder, and that he pierced her nipples and genitalia. The piercings and tattoos took place in Ray's apartment, and that Ray took pictures of each. Ray and a person named Casper took additional pictures of her with a silver camera that had a "zoom" lens. Jennifer testified that she and Ray appeared together in the pictures taken by Casper. Four of those photographs are dated October 30, 2003; Jennifer testified that she had been using drugs or alcohol in Ray's apartment when those pictures were taken.

Jennifer testified that Ray had antibiotics and pain relievers in his apartment, and that the people who spent time in his apartment brought marijuana, alcohol, and other drugs to use while there. People smoked marijuana and drank alcohol in Ray's house with his knowledge. Jennifer testified that although she took naps in Ray's apartment, she never spent the night. Ray had a computer in his apartment, which he used to "chat" online using AOL. Jennifer testified that other people, including herself, used Ray's computer.

---

[1]An arrest warrant was issued on January 16, 2004. The indictment was handed down on January 20, 2004, and Ray was arraigned on January 28, 2004.

Jacqueline H. testified that she was fifteen at the time of trial. She met Ray in August 2003, when she was thirteen. She went to Ray's house to obtain a tattoo. Ray tattooed Jacqueline's right leg, and pierced her nipples and genitalia. Ray took pictures of Jacqueline's piercings. She identified the camera with which Ray took his pictures. Another witness testified that the camera was labeled "Made in China." Jacqueline testified that between August and December 2003, she went to Ray's house at least five days a week, and spent the night at his house approximately twenty times. Jacqueline identified several persons under the age of eighteen who had spent time at Ray's house, including Jennifer, Kristen and Angela. Jacqueline testified that Ray had a computer with internet access, provided by AOL. Jacqueline also testified that there were nude pictures of Angela on Ray's computer. She testified that there were drugs and alcohol at Ray's apartment, and that Ray supplied marijuana to the teenagers. Jacqueline identified herself in twenty-two pictures that Ray. She testified that she told Ray that she was sixteen.

Kristen S. testified that she met Ray between July and August 2003, when she was fourteen. Between July and November 2003, Kristen went to Ray's house approximately ten times. Ray tattooed her genitalia and pierced her nipples. She testified that Ray gave her marijuana, and that she told him that she was fourteen. Kristen testified that Ray took nude photographs of her after she had smoked marijuana. She testified to having oral sex with Ray in his apartment. Kristen gave conflicting answers when asked if she performed oral sex on Ray in order to prevent him from showing the nude photographs to other people.

Ray's sister, Linda Wilson, testified that Ray emailed her a picture of a nude girl, with the message: "Angie is one of my sweetest. We have done a lot of piercing on her, three below the

belt." At the time, Wilson lived in California, and Ray lived in Memphis. Don Colcolough, an AOL employee, testified that logging onto AOL constituted an interstate transmission, and that sending an email from Memphis to California would also constitute an interstate transmission.

The jury also heard testimony from Marco Antonia Gonzales, Jr., the FBI special agent who arrested Ray and seized his camera. Gonzales testified that he arrested Ray in California. At the time of his arrest, Ray had a packet of pornographic photographs on his person.[2]

On October 14, the jury returned a guilty verdict on all five counts. On October 15, the district court held a sentencing hearing. The pre-sentence investigation report ("PSR") noted that the criminal statutes under which Ray was convicted carry the following penalties: 18 U.S.C § 2252(a)(4)(B) provides a penalty of ten to twenty years; 18 U.S.C. § 2252(a) provides a penalty of fifteen to forty years; and 18 U.S.C. § 2251(a) provides a penalty of twenty-five to fifty years if the defendant has been previously convicted of an offense involving child exploitation. § 2251(e). The district court determined that the twenty-five year mandatory minimum applied, because the PSR indicated that Ray had been convicted of sodomy, lewd and lascivious acts upon a child, and unlawful sexual intercourse in California in 1980.

The district court determined Ray's base offense level to be twenty-seven. U.S.S.G. § 2G2.1. It gave Ray a two-point enhancement because it determined that the victims were older than twelve but less than sixteen. § 2G2.1(b)(1)(B). The district court then calculated the new level at thirty-

---

[2]It is unclear from the record whether these pictures depicted minors.

one.[3] The district court determined that because the substance of the counts for which Ray was convicted were closely related, Ray would receive an additional four-point enhancement under § 3D1.4, a "grouping" provision. Ray received one point for each of the following groups: group one related to Angela T; group two related to Jennifer M.; group three related to Jacqueline H.; and group four related to Kristen S. Finally, the district court determined that Ray fell into criminal history category II.

Ray objected to the one-point increase for the groups relating to Jacqueline H. and Kristen S., which the district court denied. Ray also objected to the application of the twenty-five year mandatory minimum under § 2251(e), because he argued the Government failed to offer proof beyond a reasonable doubt that he had been convicted of an offense involving child exploitation. Ray also objected to a two-point enhancement for obstruction of justice, which the district court sustained, and thus reduced his offense level to thirty-three.[4] Finally, Ray argued that he underwent sextuple bypass heart surgery two to four days before the seven photographs set forth in Count One of the indictment were taken and that, because of his reduced life expectancy and the fact that he was bedridden, and thus did not have control over his home when the pictures of Angela T. and Jennifer M. were taken, he should receive a more lenient sentence.

---

[3]The district court actually enhanced Ray's base offense level by four points. It is unclear if the court doubled the two-point enhancement because it determined that there were multiple victims under the age of sixteen, if the additional two points were initially imposed for obstruction of justice, or if it simply made a math or typographical error.

[4]These two points may indicate how the district court initially assessed Ray's base offense level at thirty-five.

The district court rejected Ray's argument that he did not have control over his home, but did not address Ray's health as a factor in sentencing. After discussing the severity of the crimes, the advisory nature of the guidelines, and the impact Ray's crimes would have on the victims, the district court sentenced Ray as follows: (1) fifteen years on Count One; (2) twenty-five years on Count Two; (3) and fifty years on Counts Three, Four and Five. All counts were to run concurrently, resulting in a total sentence of 600 months.

**II**.

## A. Evidence

Ray argues that the district court erred in admitting three kinds of evidence at his trial: (1) pictures depicting the "general atmosphere" of his apartment; (2) evidence regarding the sexual activity between Ray and a fourteen-year-old minor; and (3) a sign from Ray's apartment reading "cash, grass, or ass." Ray objected to the admission of each item of evidence at trial. At the close of evidence, the district court instructed the jury as follows:

> Now you have heard testimony that the defendant committed some acts other than the ones charged in the indictment. . . . You heard allegations of drug and alcohol use involving minors. You have seen and heard about photographs of minors other than A.T. and J.M., the minors alleged in the indictment. You cannot consider this other acts evidence as evidence that the defendant committed the crimes that he is on trial for now.
> You may only consider that evidence to – to determine or to evaluate the defendant's motive, intent or you may use it to show motive, rather, intent, lack of mistake or knowledge. But you may not use that evidence to show or as evidence that the defendant committed the crime that he is on trial for as outlined in the indictment.

Ray argues that this evidence was improperly admitted under Fed. R. Evid. 404(b). Rule 404 bars the admission of evidence of other crimes, wrongs, or acts, if the admission of that evidence

is offered to prove a person's character, or conformity with those actions. Under Rule 404(b), however, such evidence may be admitted for other purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). When considering the admissibility of 404(b) evidence, we follow a three-step process. *United States v. Matthews*, 440 F.3d 818, 828 (6th Cir. 2006). First, we review the district court's factual finding that sufficient evidence exists that the other acts occurred for clear error. Second, we review whether the district court correctly determined that the evidence was admissible for a legitimate purpose *de novo*. Third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403. *Id*. Even if we find error, we will only reverse if that error is more than harmless. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) ("This court reviews a district court's evidentiary rulings for abuse of discretion, and a district court's determination will be reversed only if the abuse of discretion caused more than harmless error.").

### 1. Evidence as to General Atmosphere

Ray argues that the trial court erred in admitting "general atmosphere" evidence, including testimony that minors were permitted to consume drugs and alcohol in Ray's apartment, pictures of minors other than the two mentioned in the indictment, and pictures of Ray's children. He does not argue that the conduct depicted in the photographs and identified in trial testimony never took place,

but rather that the district court admitted the evidence for an impermissible purpose. The district court held that the evidence would not be excluded because it could establish lack of mistake: "I think that evidence is important for the jury to be able to look at those photographs and others to see that a reasonable person in the defendant's position would have known and should have known that these individuals were under age." The Government subsequently sought the admission of photographs depicting the general atmosphere in Ray's apartment, although those photographs do not appear in the record before us. Numerous witnesses testified that Ray allowed the use of and/or provided alcohol and marijuana in his home. The photographs were admitted over Ray's objection.

The Government argues that the evidence of prior bad acts was not admitted to show propensity, but goes to prove whether Ray "knowingly employed, used, persuaded, induced, enticed or coerced" the minors to engage in sexually explicit conduct, in accordance with 18 U.S.C. § 2251. The Government further argues that Ray enticed the minors by providing inexpensive tattoos, drugs and alcohol, sexually explicit pictures of other minors, a "teenage hangout," and an atmosphere in which nudity and sexually explicit activity was acceptable. It also argues that the evidence goes to establish motive, intent, and knowledge or lack of mistake, under Rule 404(b). Rule 404(b) has also been interpreted as allowing the admission of evidence that goes to establish *modus operandi. See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).

Ray concedes that his knowledge of the girls' ages was at issue, insofar as Ray claimed that he did not know that any of the minors were actually under eighteen at the time of the conduct in question. Ray argues, however, that knowledge was the only fact at issue for which prior acts evidence could be admitted; he argues that he never challenged the Government's assertion that he

induced the minors or took sexually explicit pictures. This assertion is baseless; Ray testified that he did not take many of the pictures in question, and he testified that he did not provide drugs or alcohol to anyone in his home. Thus, whether Ray provided drugs and alcohol to minors to induce them into engaging in sexually explicit conduct was at issue.

Ray argues that even if such evidence could be admitted, none of the evidence offered by the Government goes to establish that Ray used drugs and alcohol to induce Angela or Jennifer, the minors named in the indictment, to engage in sexually explicit activity for the purpose of producing child pornography. He further argues that prior acts evidence generally cannot be admitted to prove intent or motive, citing *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994) (holding that evidence of prior acts cannot be admitted to prove *mens rea* unless specific intent is an element of the charged offense).

Ray's arguments fail. Even if, *arguendo*, such evidence were improperly admitted to prove intent or motive, the evidence could have been properly admitted to establish another Rule 404(b) exception: *modus operandi*. The Government repeatedly argued that "the atmosphere that was created and purposefully created[,]. . .through those means he was able to entice, coerce, persuade these minors to engage in this conduct." *See United States v. Stevens*, 303 F.3d 711, 716 (6th Cir. 2002) ("Where a single, legitimate purpose supports the admission of the evidence under Rule 404(b), a trial court's admission of that evidence for additional reasons allowed under the rule does not constitute plain error."). Certainly, this evidence was admissible to show the means by which Ray induced the minors charged in the indictment to engage in sexually explicit conduct. For that reason, the district court did not err in admitting the evidence of Ray's prior bad acts.

### 2. Sexual Activity with a Minor

Ray argues that the district court erred in admitting testimony that he engaged in sexual activity with a minor.  Ray does not argue that the conduct to which Kristen testified never took place, but rather that the district court admitted the evidence for an impermissible purpose.  The district court admitted the testimony insofar as it showed *modus operandi*, motive, and absence of mistake.  The Government argued that the testimony established motive, because Ray threatened to show others nude pictures of the minor if she did not engage in oral sex with him.  The district court was correct in concluding that the admission of testimony that Ray threatened to publicize nude pictures of a minor if she did not engage in oral sex had an admissible purpose, because that evidence does go to establish motive, or why Ray took the nude pictures of the minors listed in the indictment.

### 3. Sign

Finally, Ray argues that the admission of testimony about a sign in his apartment that read "cash, grass, or ass" violated Rule 404(b).  Certainly, the sign itself does not prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident as it relates to § 2251(a) or § 2252(a)(4)(B).  Not only is testimony regarding the sign irrelevant, but it is precisely the kind of evidence that is prohibited by Rule 404(a); evidence of Ray's character.

In order for us to reverse Ray's convictions, however, the error must be more than harmless.  *United States v. Olano*, 507 U.S. 725, 734 (1993).  For purposes of this criminal appeal, "[a]n error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *United States v. Baldwin*, 418 F.3d 575, 582 (6th Cir. 2005);

*see also* Fed. R. Crim. Proc. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). The presence of overwhelming evidence of guilt can render the erroneous admission of other evidence harmless beyond a reasonable doubt. *See, e.g., United States v. Pugh*, 405 F.3d 390, 404 (6th Cir. 2005) (holding that the erroneous admission of an out-of-court statement was harmless where there was "overwhelming evidence" that the defendant possessed a gun when he was arrested).

Here, there was overwhelming evidence that Ray induced minors into engaging in sexually explicit conduct, that he took photographs of the minors in question, and that he transported those photographs across state lines via e-mail. Furthermore, numerous witnesses testified that they informed Ray that they were under-age. Given the abundance of evidence, the district court's error in admitting testimony regarding the sign is harmless.

### 4. Prejudice

Ray argues that even if the "general atmosphere evidence" and evidence of his sexual activity with a minor could have been admitted, that the probative value of the pictures was substantially outweighed by their prejudicial effect. "When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" *Johnson*, 27 F.3d at 1193. Thus, we are careful to apply the principles set out in Fed. R. Evid. 403 to scrutinize the admissibility of prior acts evidence. *Id*. Rule 403 requires that relevant evidence be excluded if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading of the jury: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 587 (6th Cir. 1994) (internal quotation marks omitted). Moreover, "[e]ven if the trial court abuses its discretion, a new trial is not required unless 'substantial rights' of a party are affected." *Id.*

We review a district court's conclusion that evidence is not so prejudicial as to outweigh its probative value for abuse of discretion. *Matthews*, 440 F.3d at 828. Ray argues that "the powerful impact of the prior bad acts were extremely prejudicial and deprived him of his right to a fair trial." Certainly, the admission of the "general atmosphere" evidence was not more prejudicial than it was probative. "One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). The testimonial and pictorial evidence demonstrating how Ray enticed the minors into engaging in sexually explicit conduct was the only evidence of *modus operandi*.[5] The district court did not abuse its discretion in admitting the "general atmosphere" evidence for that purpose.

---

[5]Unlike motivation, *mondus operandi* was arguably more critical to the Government's case insofar as it had to prove not only that Ray took sexually explicit pictures of minors, but that he enticed or induced those minors into engaging in sexually explicit conduct.

Ray further argues that the testimony regarding his sexual contact with Kristen was more prejudicial than probative. We need not determine whether this evidence was admissible under Rule 403, however, because any error that may have resulted from the admission of testimony regarding Ray's contact with Kristen would be harmless. "An erroneous admission of evidence that does not affect the 'substantial rights' of a party is considered harmless, and should be disregarded." *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002). Under the harmless error analysis, we are "not concerned with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained. Rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1999) (quotation omitted).

Although several witnesses referred to the sexual activity, only one witness, Kristen, testified with any certainty that the alleged conduct took place. Overall, the testimony regarding the alleged sexual activity was brief and free from graphic detail. Importantly, the district court instructed the jury it could not consider that evidence as evidence of guilt as to the charged offenses: "You specifically heard allegations that the defendant engaged in sexual activity with a minor . . . . You cannot consider this other acts evidence as evidence that the defendant committed the crimes that he is on trial for now." A district court may lessen the likelihood that the jury considers Rule 404(b) evidence for an improper purpose by giving the jury a limiting instruction. *See Merriweather*, 78 F.3d at 1077 ("The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose."). Furthermore, the unchallenged

evidence offered to prove the elements of those counts alleged in the indictment, including pornographic pictures of Angela T. and Jennifer M., was not only independently sufficient to establish Ray's guilt, but was overwhelming. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) ("Given the extensive testimony at trial supporting [the defendant's] guilt on the counts of conviction, this Court finds that the district court's exclusion of the hearsay evidence was harmless error." (citing *Chapman v. California*, 386 U.S. 18, 23-24 (1967))).

**B. Sufficiency of the Evidence**

Ray argues that there was insufficient evidence to sustain the jury's verdict convicting him of transporting or shipping child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(1). When a conviction is attacked for insufficient evidence, we must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Circumstantial evidence and direct evidence are accorded the same weight and "the uncorroborated testimony of an accomplice may support a conviction under federal law." *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990) (quoting *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 475 U.S. 1017 (1986)). We will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence. *Blakeney*, 942 F.2d at 1010.

There exists sufficient evidence that Ray sent the email at issue to Wilson. Although Ray argues that he was in poor health at the time, and that numerous people had access to his computer, the

record indicates that the email was sent from Ray's personal email account, and that the picture of Angela was sent as an attachment to an email, to which there were also attached non-pornographic images of Ray's children. Although there was testimony that others had access to Ray's computer, only Ray testified that other people were able to log onto his computer under his AOL username.

Ray also argues that the Government failed to establish that the camera and the photograph-processing machine with which the pictures were printed had traveled in interstate commerce. In order to uphold a conviction under § 2252(a)(1), it is not necessary that the Government prove that the visual depiction was produced by means that traveled through interstate commerce, but rather only that Ray knowingly transported the visual depiction in interstate commerce via his computer. 18 U.S.C. § 2252(a)(1).

Viewing the evidence in the light most favorable to the Government, it is clear that a rational jury could have found that Ray knowingly e-mailed the picture of Angela to his sister in California.

**C. Commerce Clause**

Finally, Ray argues that 18 U.S.C. §§ 2252(a)(4)(B) and 2251(a), which criminalize the possession and production of child pornography, are unconstitutional as applied to his case, because he argues that the federal criminalization of his activities exceeds Congress's Commerce Clause powers. The constitutionality of a statute is a question of law, which we review *de novo*. *United States v. Corp*, 236 F.3d 325, 328 (6th Cir. 2001). "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

There are three general categories of regulation as to which Congress is authorized to engage under the Commerce Clause. Congress can regulate the channels of interstate commerce, the instrumentalities of interstate commerce, and the activities that substantially affect interstate commerce. *Perez v. United States*, 402 U.S. 146, 150 (1971). Thus, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 2206 (2005) (quoting *Wickard v. Filburn*, 317 U.S. 111, 125 (1942)). The Supreme Court has made it clear that when "a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id*. In order to determine whether a statute is unconstitutional because it exceeds Congress's Commerce Clause power, we must consider four issues: (1) whether the prohibited activity is commercial or economic in nature; (2) whether there is an express jurisdictional element involving interstate activity which might limit the statute's reach; (3) whether Congress made findings about the effects of the prohibited conduct on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 610-12. We need not determine whether the activities proscribed in § 2251(a) and § 2252(a)(4)(B) actually substantially affect interstate commerce, but only whether a "rational basis" exists for so concluding. *Raich*, 125 S.Ct. at 2208 (citing *United States v. Lopez*, 514 U.S. 549, 557 (1995)).

We have held on at least three occasions that the federal child pornography statutes are constitutional as applied, even though the defendants in those cases engaged in behavior that was

arguably local in nature. *See Chambers*, 441 F.3d at 451-55; *United States v. Andrews*, 383 F.3d

374 (6th Cir. 2004); *United States v. Gann*, 160 F. App'x 466 (6th Cir. 2005). Furthermore, we have

rejected an "as-applied" challenge to § 2252(a)(4)(B) since *Raich*, the Supreme Court's most recent

Commerce Clause decision. *See Chambers*, 441 F.3d at 451-55. "[T]o prevail on a facial attack the

plaintiff must demonstrate that the challenged law [] 'could never be applied in a valid manner.'"

*New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988). Our decisions holding

that §§ 2251(a) and 2252(a)(4)(B) could be constitutionally applied to a particular defendant prevent

us from now holding that those statutes are unconstitutional on their face. *See* 6th Cir. R. 206(c).

Ray's argument that §§ 2251(a) and 2252(a)(4)(B) are unconstitutional as applied to him,

however, is not foreclosed by our precedent. In *United States v. Corp*, 236 F.3d 325 (6th Cir.

2001), we set forth the factors that should be considered in a determination of whether the statutes

at issue are constitutional as applied to a particular defendant:

> Was the activity in this case related to explicit and graphic pictures of children engaged in sexual activity, particularly children about fourteen years of age or under, for commercial or exploitive purposes? Were there multiple children so pictured? Were the children otherwise sexually abused? Was there a record that defendant repeatedly engaged in such conduct or other sexually abusive conduct with children? Did defendant move from place to place, or state to state, and repeatedly engage in production of such pictures of children? These questions are relevant to a determination on a case-by-case basis about whether the activity involved in a certain case had a substantial effect on commerce.

*Id*. at 333. The purpose of our inquiry is to determine whether Ray's activity was *substantially*

related to interstate commerce. In *Corp*, we held that § 2252(a)(4)(B) could not be constitutionally

applied to the defendant. There, the photographed minor was seventeen years old, and there was

no evidence that she was threatened or coerced. 236 F.3d at 332-33. The defendant was not alleged

to be a pedophile, nor sexually involved with any minor except for the seventeen-year-old. *Id.* at 333. Finally, the defendant in that case was not involved, nor did he intend to be involved, in the distribution or sharing of pornographic pictures in question. *Id.* at 323.

Since *Corp*, we have considered the aforementioned factors in three cases, *Andrews*, *Chambers*, and *Gann*. In each case, we held that the factors dictated that the statutes in question could be constitutionally applied to the defendants' conduct. The Government persuasively argues that like in those previous cases, we should answer in the affirmative each of the questions set forth in *Corp*. The record indicates that there were numerous minors involved in pictures, and that at least child was as young as thirteen. It also indicates that Ray forced Kristen, who was only fourteen at the time, to engage in oral sex. Furthermore, Ray shared at least one of these pictures with his sister, Wilson, and possessed pornographic pictures at the time of his arrest in California. Given the facts of this case, §§ 2251(a) and 2252(a)(4)(B) can be constitutionally applied to criminalize Ray's conduct.

## D. Reasonableness of Sentence

After *United States v. Booker*, 543 U.S. 220 (2005), we require that a district court not only consider a defendant's applicable guideline range, but the district court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Williams*, 432 F.3d 621, 623 (6th Cir. 2005). Section 3553(a) sets forth distinct factors that a district court must consider when sentencing a defendant. Included in the factors a district court should consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense; (3) the need to afford adequate deterrence of criminal

conduct; (4) the need to protect the public from the defendant; (5) the need to provide the defendant

with treatment, care, or training; (6) the kinds of sentences available; (7) the kinds of sentence and

the sentencing range established for the offense; (8) any pertinent policy statement; (9) the need to

avoid unwarranted sentence disparities; and (10) the need to provide restitution to any victims of the

offense. *See* § 3553(a). Although a district court is not required to consider explicitly every single

factor enumerated in § 3553(a), "[a] mere list of characteristics of the defendant considered at

sentencing by the district court, 'without any accompanying analysis, is insufficient to justify the

sentence imposed, as it renders our reasonableness review impossible.'" *Id*. (citing *United States*

*v. Jackson*, 408 F.3d 301, 304 (6th Cir.2005)). "Accordingly, an 'articulation of the reasons the

district court reached the sentence ultimately imposed' is necessary 'to enable this court to engage

in a meaningful reasonableness review.'" *Id*.

Ray argues that his sentence of 600 months is not reasonable under *Booker*. He argues that

given a Guideline range between 235 and 290 months, and because § 2251 sets forth a mandatory

minimum sentence of twenty-five years, his sentence should not have exceeded 300 months. In

imposing a sentence that exceeded both the Guidelines range and the twenty-five year mandatory

minimum, the district court considered the factors set forth in § 3553(a) as follows:

> Mr. Ray, this – this case is – is one of a series of cases that this court has unfortunately
> had to deal with where there have been child victims, I submit, whose lives [have been]
> forever altered by folks like you who have put your own personal interest above the health
> and welfare and the interest of children.
> I did sit through this trial and there were some horrible pictures, and I submit I didn't see
> all of them, the jury didn't see all of them. And some of the stories that those children told
> were just awful, and I do remember this young woman who went through horrible things to

> try and make sure that those pictures of her did not get out and that other people didn't get to see them. And that kind of conduct cannot be tolerated.
>
> Mr. Ray, you're not a first offender with these types of incidents. And I – I agree with Mr. Newsom, I think this is a situation that at whatever age, if you are out in the community, children who may come in contact with you will be at risk.
>
> This kind of conduct messes up countless lives. It is conduct that is abominable and it is conduct that society must be protected from at whatever cost.
>
> In this case, Mr. Ray, considering the statutory minimums, considering the guidelines[,] considering the policy implications, and the need to protect vulnerable victims, I believe that a severe sentence is in order in this case.

Although the district court thoroughly considered several of the statutory factors — specifically the nature and circumstances of the offense, the need to afford adequate deterrence of criminal conduct, the need to protect the public from the defendant — its analysis does not adequately explain an upward departure that exceeds twenty-five years. Although the district court did not have the benefit of this guidance, our case-law suggests that "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer to enable the court of appeals to assess the reasonableness of the sentence imposed." *United States v. Buchanan*, 449 F.3d 731 (6th Cir. 2006) (Sutton, J., concurring) (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)).

Here, the district court's consideration of some of the § 3553(a) factors does not explain why it added an additional twenty-five years to Ray's sentence. Furthermore, the district court did not explicitly respond to Ray's request for a lenient sentence based on his recent sextuple bypass surgery. Ray made two distinct arguments that his poor health militated in favor of a reduced sentence. First, Ray argued that he did not intend for the events underlying his convictions to take place; he argued that because of his poor health at the time, he was simply unable to control the

environment in his apartment.  The district court explicitly rejected this argument.  Second, Ray

argued that he deserved a lenient sentence because of his life expectancy was significantly reduced

by his poor health.  The district court did not accept or reject this argument.

We have recently held that "[w]here a defendant raises a particular argument in seeking a lower

sentence, the record must reflect both that the district judge considered the defendant's argument

and that the judge explained the basis for rejecting it."  *United States v. Richardson*, 437 F.3d 550,

554 (6th Cir. 2006).  We are therefore obligated to remand Ray's sentence, in order that the district

court may address his argument that he should receive a lower sentence based on his reduced life

expectancy, and may set forth any additional reasons for imposing a significant upward departure

in this case.

## V.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Ray's conviction on all five counts.  We **VACATE** the

district court's judgment of sentencing, and **REMAND** to the district court for resentencing.