**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0345n.06
Filed: May 15, 2009

**No. 07-6055**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| JOHN WYATT MELLIES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: KEITH, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant John Wyatt Mellies appeals his jury conviction for possession of child pornography and sentence of 96 months of imprisonment. He contends that the government violated his due process rights by destroying or losing potentially exculpatory evidence; the district court prejudiced the jury by permitting the government to publish 114 images and admit into evidence approximately 1,600 images of child pornography, half of which were duplicates; the court abused its discretion by failing to grant a mistrial after improper testimony by a government witness; the court erroneously instructed the jury on an element of the offense; the evidence was insufficient to establish his guilt beyond a reasonable doubt; the cumulative effect of the alleged errors violated his right to a fair trial; and his sentence was unreasonable.

Because all issues raised on appeal by defendant are meritless, we affirm.

I.

On August 3, 2005, a grand jury returned a one-count indictment against Mellies, charging him with possessing a computer and computer media that contained images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Mellies was tried by jury beginning May 22, 2007.

The evidence at trial established that on June 21, 2004, while Mellies was out of town, his wife, Lisa, voluntarily provided the Dickson County Sheriff's Office in Charlotte, Tennessee, with a laptop computer and 47 compact discs, many of which contained child pornography. Mrs. Mellies consented to a search of the home[1] she shared with her husband and fourteen-year-old son from her prior marriage.[2]

During their search, law enforcement photographed an upstairs office that was furnished with a computer desk and a Three Stooges figurine sitting atop a stereo speaker. The unplugged cords surrounding the desk indicated that a computer was previously there.

Thereafter, officers obtained a warrant for defendant's arrest. Mr. Mellies arrived home in his car, bearing the personalized Tennessee license plate "YUIATTA." Detective Amy Longtin

---

[1]Although Lisa Mellies turned her husband in and initially wanted to divorce him, she later reconciled with him and refused to testify at trial, invoking the marital privilege.

[2]There was no evidence in the record that Mr. Mellies ever behaved sexually inappropriately toward his stepson.

testified that after his arrest, Mellies stated: "I can tell you this: That I'm not a part of some sort of a ring" and that "this is something that doesn't have anything to do with anybody else at all."

Detective Buddy Tidwell conducted a forensic examination of the electronic evidence. In all, approximately 11,000 images, hundreds of movies, and stories ranging from the "high dozens to low hundreds" depicting child pornography were found on the laptop and approximately 23 CDs. While most of the child pornography was stored on the CDs, approximately 493 images were saved on the laptop. The pictures and movies depicted vaginal, anal, oral, and digital penetration, as well as bondage and torture, of children. Most of the files and folders storing the child pornography had innocuous names, although some were sexually explicit and referred to children. The majority of the files were password-protected. Each CD containing child pornography was marked with a written symbol. Tidwell estimated that it would have taken months to download the thousands of images and hundreds of video files of child pornography, zip the images into files, and name the "hundreds and hundreds of directories" storing them.

Tidwell also testified that he was "reasonably certain," based on "the totality of the evidence and everything that I have examined," that defendant Mellies was responsible for collecting the child pornography. According to Tidwell, "the vast majority of the activity that occurred on [the] laptop [was] attributable" to defendant Mellies because "it's very seldom that I would encounter a piece of media or a body of media like this that is so devoid of multiple users or so devoid of other explanations. I mean . . . an overwhelming amount of evidence in this laptop points to a single owner/user." Tidwell based his conclusions on several discoveries.

The laptop stored hundreds of documents, including cover letters, resumés, and fax cover sheets, as well as 1,199 emails and five email addresses that were all associated with defendant Mellies, except a single email message that was signed by Lisa Mellies and one document written by her son. The laptop's operating system and various software found on the computer were registered to defendant, and the computer was named "YUI02."[3] There were no other registered users or owners of software. From January 18, 2001, until July 15, 2004, the user names associated with the Mellies' internet account were "YUI02" and "WyattPal,"[4] and the contact person on the account was defendant. From May 24, 2004, through June 20, 2004, the account connected to the internet 68 times, for a total of 120 hours, and downloaded 1.6 gigabytes of information, or more than one-third of the entire amount of space available on the laptop.

Although the child pornography found on the CDs was not contemporaneously saved on the laptop, the forensic examination revealed "significant artifacts that occurred both on the CDs as well as on the laptop," associating both with the same child pornography. Specifically, the laptop's hidden archives stored a large number of file and directory names that matched those found on the CDs, suggesting that the images and video files on the CDs were once located on the laptop. One of the CDs containing child pornography had a unique volume number that was also found in the laptop's archives. A separate log file of 1,154 pages recorded the compression and decompression

---

[3]Detective Tidwell testified that "YUIATTA" and "YUI02" were references to the Three Stooges, one of whom often used the catch phrase, "Why, you, I oughta . . ."

[4]Defendant was previously employed by PAL Health Technologies, and a large number of documents found on the laptop related to that company.

of files that were no longer on the laptop but that were saved on the CDs, many of which had names describing sexual activities with children. Tidwell verified that information from the laptop was downloaded onto at least four of the CDs containing child pornography.

The dates of the CD files ranged from 1999 through May 2004, with the bulk of the dates between 2001 and 2004. The dates were consistent with the time span in which the laptop was used.

Special Agent Coyt Phillips of the Tennessee Bureau of Investigation Forensic Service Division testified that four of defendant's fingerprints were found on three of the CDs containing child pornography. Neither Lisa Mellies's fingerprints nor those of her son were recovered from any CD.

On May 24, 2007, the jury found Mellies guilty of possessing child pornography as charged in Count One. At the sentencing hearing on August 16, 2007, Mrs. Mellies testified that she found the CDs she delivered to the Sheriff's Office behind a speaker in her husband's office. She viewed several of the CDs and discovered that they contained child pornography. Thereafter, the court sentenced defendant to 96 months of imprisonment and a five-year term of supervised release.

Mellies timely appeals.

II.

Mellies first requests that we reverse his conviction on the ground that the government violated his due process rights under the Fifth Amendment to the federal Constitution by destroying

potentially exculpatory fingerprint evidence and a computer.[5]

Regarding the fingerprint evidence, he contends that in its attempt to recover evidence of child pornography, the government scrubbed and washed (resurfaced) the CDs, thereby destroying potentially exculpatory fingerprints. As to the computer, Mellies asserts that the government lost or destroyed a Gateway computer he owned and which he characterizes as "a critical piece of evidence" because "the trial dealt primarily with computer files and computer issues" and the computer "might have solved mysteries that Detective Tidwell could not explain[,]" including which computer was used to download the child pornography and create the CDs and the person responsible for doing so.

Defendant failed to raise his due process challenges to the district court.[6] Accordingly, we

_____

[5]The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V.

[6]Although defendant filed a pretrial motion to exclude fingerprint evidence, the request was based on the government's alleged failure to timely and adequately disclose its fingerprint evidence as required by Rule 16 of the Federal Rules of Criminal Procedure. The motion did not allege that the government violated his due process rights by *destroying* or inadequately *preserving* fingerprint evidence. Accordingly, the district court's order denying the motion did not address the due process issues defendant now raises for the first time in his appeal. Moreover, defendant did not assert a due process violation either during or after trial when he undoubtedly knew, based on testimony, that the government resurfaced the CDs.

Regarding the Gateway computer, defendant contends that he first discovered the computer at trial when his counsel observed it in photographs. He complains that he "should not be penalized because the Government withheld evidence until mid-trial." However, defendant's argument is disingenuous because if, as he asserts, he owned a Gateway computer containing exculpatory evidence, he obviously would not have first discovered the computer at trial; rather, he would have known about it and conveyed such crucial information to his attorney before trial. Moreover, defendant cites no authority holding that evidence that has been improperly withheld and then made

may deem them waived. *United States v. Williams*, No. 07-6358, 2009 U.S. App. LEXIS 4921, at

*7 (6th Cir. Mar. 9, 2009) (unpublished) (stating that it is "well within this court's discretion" to

refuse to consider a defendant's Fifth Amendment challenge raised for the first time on appeal, and

"[i]ndeed, it might be more appropriate to ignore the argument since considering it might encourage

defendants to sandbag district courts and the Government in some instances").

We may also consider the issue for plain error. FED. R. CRIM. P. 52(b) (stating that "[a] plain

error that affects substantial rights may be considered even though it was not brought to the court's

attention"); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Angel*, 355 F.3d

462, 469 (6th Cir. 2004). However, "[t]he plain error doctrine is to be used sparingly, only in

exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Phillips*,

516 F.3d 479, 487 (6th Cir. 2008) (quoting *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992)).

To prevail on clear error review, the defendant must show: (1) error, (2) that is clear and obvious,

and (3) that affects his substantial legal rights. *Angel*, 355 F.3d at 469. If all three requirements are

met, we may exercise our discretion to consider the error, "but only if . . . the error seriously affects

the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467

---

known "mid-trial" extinguishes counsel's obligation to assert a due process violation at that time. Indeed, because the trial was not yet completed, defense counsel had ample opportunity to move for a mistrial. That defense counsel did not do so suggests that he chose to forego that option as part of his trial *strategy*. Supporting that conclusion, we note that defense counsel vigorously cross-examined Detective Tidwell about the computer, and over the government's objection, successfully moved the court to permit him to publish and admit into evidence the photographs in which the computer appeared. Defense counsel thus sought to procure an acquittal based on the "mysteries" surrounding this Gateway computer and when the tactic proved unsuccessful, he reversed tactics in this appeal. Defendant cannot have his cake and eat it too.

(internal quotation marks and citations omitted).

The Supreme Court has stated that the Due Process Clause does not impose upon the police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The parties agree that where, as here, the basis for defendant's due process complaint is that the government failed to "preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated" him, *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (quoting *Youngblood*, 488 U.S. at 57), he must show: "(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002). Mere negligence, even gross negligence, by the government in failing to preserve potentially exculpatory evidence does not establish the required bad faith. *Wright*, 260 F.3d at 571.

Whether we deem defendant's due process challenge waived or review it for plain error, the result is identical and affords defendant no relief.

## A.

Detective Tidwell testified at trial that he resurfaced, at most, five of the forty-seven CDs and that the "vast majority" were not resurfaced. He subjected the CDs to the resurfacing process because they "were scratched and damaged to the point that none of the computers in my lab would

read them." Tidwell testified that he was confronted with a dilemma: whether to attempt to collect data from the damaged CDs or obtain fingerprints from them. Although the resurfacing process would have destroyed any fingerprints on the data side of the CDs, it did not necessarily affect fingerprints on the non-data or label side of the CDs, which was not resurfaced.

Based on Detective Tidwell's unchallenged testimony, we conclude that the government's conduct was at most negligent and that it did not rise to the level of bad faith. Defendant does not dispute that the resurfacing process affected a fraction of the total CD evidence against him, that only those CDs that were damaged were resurfaced, or that fingerprints on the non-data side of the CDs were unaffected. Defendant also does not contest Detective Tidwell's articulated legitimate reason for resurfacing the CDs. We further note that defendant might have even *benefitted* from the resurfacing process because assuming that fingerprints were destroyed, *his* fingerprints may have been among those lost.

Further, the exculpatory value of the evidence was not apparent before its alleged destruction for three reasons. First, it is purely speculative whether the resurfaced CDs previously contained fingerprints. Second, even if fingerprints were on the CDs, it is wholly conjectural that such fingerprints would be *exculpatory*. Finally, any fingerprints that might have been recovered from the CDs would not have negated the evidence of defendant's fingerprints that was recovered from the CDs containing child pornography.

B.

Regarding the Gateway computer, there is no "clear and obvious" due process violation from

an unauthenticated photograph that merely pictures a computer.  The government did not offer any incriminating evidence relating to that computer.  As with the fingerprint evidence, defendant merely speculates that the computer contained exculpatory evidence, and because he allegedly owned it, he would have known if it did.  Further, any information on the computer would not have negated the incriminating evidence offered at trial.  Indeed, Detective Tidwell testified that such evidence would not have changed his opinion that an individual using defendant's internet user name collected the child pornography.

For these reasons, defendant's due process challenges are forfeited and, alternatively, meritless.

III.

Mellies also contends that the district court prejudiced the jury by permitting the government to publish 114 images and admit into evidence approximately 1,600 images of child pornography, half of which the government conceded at oral argument were duplicates.[7]  He asserts that the evidence was improperly cumulative and unnecessary in light of his offer to stipulate that the images were child pornography and because the jury was not required to determine the quantity of child pornography to convict him of possessing it, that the prejudicial effect of the evidence outweighed its probative value, and that the district court improperly ignored its gate-keeping duties, which he contends obligated it to sua sponte examine each image, make a ruling on its probative versus prejudicial effect, and provide a cautionary instruction to the jury about its possible prejudicial

---

[7]The government explained that the duplicate images were caused by a software error.

impact.

A.

"If a defendant does not state the specific ground for his evidentiary objection, and that ground is not apparent from the context, we review a newly raised objection under the plain-error standard." *United States v. Seymour*, 468 F.3d 378, 384 (6th Cir. 2006) (internal quotation marks omitted). Otherwise, we review a trial court's decision regarding the admission of evidence under Rule 403 of the Federal Rules of Evidence[8] for abuse of discretion. *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007).

When reviewing for abuse of discretion, we view "the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Jackson*, 473 F.3d at 668 (quoting *United States v. Moore*, 917 F.2d 215, 233 (6th Cir. 1990)). Moreover, "the prejudice to be weighed is the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial . . . ." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). "It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad." *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). We have emphasized that "[i]f judicial self-restraint is ever desirable, it is when

---

[8]Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984) (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).

1.

Because defendant objected to admission of the evidence on the specific ground that he made an offer to stipulate, we review the district court's decision overruling that objection and admitting the evidence for abuse of discretion.

In *United States v. Caldwell*, No. 97-5618, 1999 U.S. App. LEXIS 7417 (6th Cir. Apr. 13, 1999) (unpublished), we held that the district court did not abuse its discretion under Rule 403 in admitting evidence of child pornography, despite the defendant's offer to stipulate that the evidence was, in fact, child pornography. *Id*. at *20-*22.[9] *Caldwell* relied upon the Supreme Court's acknowledgment in *Old Chief v. United States*, 519 U.S. 172 (1997) that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away . . . ." *Caldwell*, 1999 U.S. App. LEXIS 7417, at *21 (quoting *Old Chief*, 519 U.S. at 189)).[10] *Caldwell* reinforced our prior decisions holding that even in the sensitive arena of child pornography cases, a defendant's

---

[9]Unpublished decisions of this court are not precedentially binding under the doctrine of stare decisis but may be considered for their persuasive value. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

[10]In *Caldwell*, we distinguished the Supreme Court's holding in *Old Chief* that the district court abused its discretion in admitting evidence of the defendant's prior conviction over the defendant's offer to stipulate. *Old Chief*, 519 U.S. at 190-92. We noted that *Old Chief*'s holding was an "exception" to the general rule against forced stipulations and that it applied only to "stipulations to prior convictions as an element of an offense." *Caldwell*, 1999 U.S. App. LEXIS 7417, at *21. Indeed, the Supreme Court unambiguously limited its holding in *Old Chief* to "cases involving proof of felon status." *Old Chief*, 519 U.S. at 183 n.7.

offer to stipulate does not deprive the government of its right to reject the offer and present its evidence, particularly because the government bears the burden of proving the accused guilty beyond a reasonable doubt. *See United States v. Mercado*, No. 86-1872, 1987 U.S. App. LEXIS 11567, at *12 (6th Cir. 1987) (unpublished) (stating that "[a] cold stipulation can deprive a party of the legitimate moral force of his evidence, . . . and can never fully substitute for tangible, physical evidence or the testimony of witnesses") (internal quotation marks omitted); *United States v. Ryan*, No. 81-1317, 1983 U.S. App. LEXIS 13065, at *6-*7 (6th Cir. 1983) (unpublished) (holding that the district court did not abuse its discretion in admitting into evidence photographs of child pornography over defendant's offer to stipulate because "[a]s a general rule, the government is not bound by a defendant's offer to stipulate").

Based on our reasoning in these decisions, we hold that the government was not required to accept defendant's offer to stipulate and that the district court did not abuse its discretion in admitting the evidence notwithstanding the offer.

2.

Defendant's remaining evidentiary objections were not raised before the district court. His appellate brief references the following trial objections.

When the government moved to admit an exhibit containing images of child pornography, defense counsel objected "for the reasons we stated at the pretrial conference . . . we're not contesting the fact that these images portray children. We just don't think it's appropriate to publish it, because of what all the concerns are." When the court attempted to elicit those concerns, defense

counsel responded: "[T]he matters that I discussed in chambers. I don't think it's appropriate to delve into it. I'm just willing to stipulate – ." Later, when the government moved to admit another exhibit containing child pornography, defense counsel lodged another objection: "Your Honor, note my continuing objection. I have a continuing objection to these in light of my offer to stipulate to these matters." Finally, upon the government's motion to admit another exhibit containing similar images, defense counsel stated: "Same objection."

Thus, other than his offer to stipulate, defense counsel did not articulate the remaining grounds for his evidentiary objections, and those grounds are not apparent from the context. Counsel's references to "concerns" and whether the photographs were "appropriate" were vague and conclusory. They do not suggest to us that the grounds upon which counsel's objections were based were concerns about the images being cumulative, prejudicial, or unnecessary. Although counsel's objections refer to arguments made at the pretrial conference and in chambers, counsel did not cite those proceedings in his appellate brief, did not provide transcripts of them in the record on appeal, nor are the transcripts on the district court's electronic docket. It was incumbent upon defense counsel to insist that they be placed on the record to preserve them for appellate review. *See Evans v. United States*, 397 F.2d 675, 680 (D.C. Cir. 1968) (stating that "it is counsel's burden to see to it that the record is complete"). Had counsel done so, we could properly evaluate whether the district court's articulated rationale for overruling the objections constituted an abuse of discretion.

Whether we review the district court's admission of the images for plain error or abuse of discretion, the outcome is identical and entitles defendant to no relief. Mellies was charged in a one-

count indictment of knowingly possessing child pornography. The evidence – images of child pornography – was, by its nature, inherently disturbing but unavoidable. While defendant characterizes it as prejudicial, cumulative, and unnecessary, this evidence was, in fact, *essential* to proving an element of the charged crime. *See* 18 U.S.C. § 2252A(a)(5)(B) ("possesses . . . an image of child pornography . . . ."). The evidence is thus distinguishable from other genres of evidence that are merely indirect and therefore more likely to prejudice or confuse a jury, such as evidence of past criminal conduct or similar acts.

Moreover, the 1,600 images admitted into evidence constituted a small fraction – approximately fifteen percent – of the total 11,000 images of child pornography recovered from defendant's home.[11] Significantly, when we asked defense counsel at oral argument to suggest the number of images that would have been appropriate for admission, defense counsel conceded that she did not know. We note that even where photographic evidence of pornography relates to *uncharged* conduct, one of our sister circuits has observed that "it is difficult, if not impossible, to draw a line at which such evidence, by virtue of its sheer volume, necessarily becomes unfairly prejudicial." *United States v. Long*, 328 F.3d 655, 664 (D.C. Cir. 2003).

Defendant's arguments also cut both ways. The large number of images might have numbed or desensitized the jury, rather than prejudiced it. Further, that the government relied on duplicate

---

[11]Defendant inaccurately asserts in his appellate brief that all 11,000 images were available to the jury during their deliberations. At oral argument, the parties clarified that, although all 11,000 images were stored on the CDs and laptop computer that were provided to the jury, the jury could not access the images.

images to prove its case could have caused the jury to infer that the government did not have a strong case against defendant. Finally, because images depicting children engaging in sexual acts are disturbing to the average person and the jury was only required to find that *one* of the images depicted child pornography to convict defendant, it is reasonable to conclude that the jury most likely did not dwell on the pictures.

The potential for prejudice was lessened when, during voir dire, the district court warned prospective jurors about the sensitive nature of the images and excused, for cause, at least one juror who stated that she would not be able to view the images without bias against defendant. *See Mercado*, 1987 U.S. App. LEXIS 11567, at *12 (holding that "the potential for unfair prejudice to defendant was minimized by the fact that potential jurors who did not believe they could put aside any inflammatory impact the pedophilic materials might have were excused for cause").

For these reasons, we hold that the district court did not plainly err or abuse its discretion in admitting the challenged evidence.

3.

Defendant does not contend, nor is there any evidence in the record indicating, that defendant urged the district court to examine each image, make a ruling on its probative versus prejudicial effect, or provide a cautionary instruction to the jury. Accordingly, we review the issue for plain error. Defendant cites no authority holding that the trial court's failure to sua sponte complete these tasks constituted plain error, and we hold that in this case, it did not. We also note that defense counsel had ample opportunity to unilaterally mitigate any prejudicial effects from the evidence

during his opening and closing arguments to the jury. Further, we observe that the jury instructions included an instruction on "sympathy and hostility," which warned jurors to avoid "emotional considerations" during their deliberations.

B.

Assuming arguendo that the district court abused its discretion or plainly erred in admitting the contested evidence, we alternatively hold that its error was harmless. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (stating that "claims of error with regard to the admission or exclusion of evidence are prime candidates for application of the harmless error rule") (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2885 (2d ed. 1995)). "An error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Baldwin*, 418 F.3d 575, 582 (6th Cir. 2005) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003)). "The presence of overwhelming evidence of guilt can render the erroneous admission of other evidence harmless beyond a reasonable doubt." *United States v. Ray*, 189 F. App'x 436, 444 (6th Cir. 2006) (unpublished).

For the reasons articulated in our examination of the sufficiency of the evidence in Part VI, the evidence overwhelmingly proved that defendant Mellies knowingly possessed child pornography as charged.

IV.

Next, Mellies contends that the district court abused its discretion by failing to grant a mistrial after improper testimony by a government witness, opting instead to cure the possible prejudicial impact of the testimony by instructing the jury to disregard it.

When asked at trial about Mrs. Mellies's "demeanor" at the time she provided the evidence to the Sheriff's Department, Detective Amy Longtin testified that "[s]he was crying and said that she was scared that – ." Counsel for the government immediately interrupted Detective Longtin, warning: "Just her demeanor is all we . . . need."

Later, in response to the prosecutor's question at trial asking what happened after procuring the arrest warrant, Detective Longtin testified that "we had retrieved information that [Mr. Mellies] could possibly be armed –" Counsel again interjected, instructing Detective Longtin: "[P]lease don't get into what you'd been told."

Defense counsel objected and moved for a mistrial based on Detective Longtin's testimony suggesting that Mrs. Mellies was afraid of her husband and that he was armed. Counsel protested that he could not "unring the bell" and that "now it's incumbent on me to show somehow Mr. Mellies is not violent . . . ."

The prosecutor suggested that the court issue a curative instruction, to which defense counsel objected on the basis that such an instruction could not cure the prejudicial effects of the testimony. Although the court agreed that the challenged testimony was "regrettable," "went too far," and "was not responsive to the question," it ruled that any harm could be remedied by an appropriate

instruction, particularly because the trial had just begun. Accordingly, the court read the following

instruction:

> Ladies and gentlemen of the jury, in my preliminary instructions to you, you will
> recall that I told you that there might be times during the course of the trial when I
> would have to instruct you that certain testimony that you heard was improper and
> that you were to disregard that certain testimony, whatever it might be – and I would
> describe it – and give it no weight or consideration upon your oath.
>
> Now, in this instance, this witness, during her testimony, made some statement to the
> effect that she was told that the defendant might be possibly armed. And she also
> made a statement that she attributed to Mrs. Mellies that she – Ms. Mellies – was
> afraid.
>
> I now instruct you that you're to disregard that testimony by this witness in those two
> respects; any reference to the defendant possibly being armed and, secondly, any
> testimony by this witness about Mrs. Mellies being afraid. And give that testimony
> – put it out of your mind and give it absolutely no weight or consideration upon your
> oath. Just disregard it and let it play no part or consideration in your ultimate
> decision in this case.

We review a motion for mistrial for abuse of discretion and examine five factors to determine

the extent to which improper testimony prejudiced the defendant:

> (1) whether the remark was unsolicited, (2) whether the government's line of
> questioning was reasonable, (3) whether a limiting instruction was immediate, clear,
> and forceful, (4) whether any bad faith was evidenced by the government, and (5)
> whether the remark was only a small part of the evidence against the defendant.

*United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006) (quoting *Zuern v. Tate*, 336 F.3d 478, 485

(6th Cir. 2003)).

All of the factors suggest that the district court did not abuse its discretion in denying

defendant's request for a mistrial. First, the improper testimony was unsolicited. The prosecutor

questioned Detective Longtin about Mrs. Mellies's "demeanor" and the events that occurred after

obtaining the arrest warrant; counsel did not ask Ms. Longtin about statements Mrs. Mellies made or whether defendant was armed. In fact, the court correctly found that the improper testimony was "not responsive to the question." Second, the government's line of questioning was reasonable because it provided necessary context about the circumstances surrounding the government's acquisition of the evidence and defendant's arrest. Indeed, it was essential that the jury know Mrs. Mellies's demeanor at the time she provided the police with evidence that incriminated her husband in a crime because defendant's theory was that *Mrs. Mellies* (or her son), not defendant, downloaded and possessed the child pornography. Third, immediately after defendant objected and the parties and court conferenced at the bench, the court read a clear and forceful curative instruction directing that the jury wholly disregard the improper testimony. Fourth, there was no bad faith on the part of the government as unambiguously demonstrated by the prosecutor's immediate interruptions of Detective Longtin's testimony and warnings that "[j]ust her demeanor is all we . . . need" and "please don't get into what you'd been told." Finally, the improper testimony consisted only of two statements that had no bearing on the guilt or innocence of defendant because it had no direct relevance to the elements of the charged offense.

For these reasons, we hold that the district court did not abuse its discretion in denying the motion for mistrial. Alternatively, and as addressed in Part VI, there is sufficient evidence of guilt, apart from any effect the improper testimony may have had, to sustain the conviction. Accordingly, assuming arguendo that the court erred, we alternatively hold that the error was harmless. *See*

*Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) (stating that "Confrontation Clause violations are subject to harmless error review").

V.

Defendant also argues that the district court erred in its instruction to the jury on the jurisdictional element of the offense. Specifically, he contends that: (1) the court erred by rejecting his proposed jury instruction, which would have required the jury to find that the child pornography had a "substantial effect" on or "sufficient connection" to interstate commerce; (2) the court improperly "instructed away" the jurisdictional element when it told the jury that the image moved in interstate commerce if it "was created in a State other than Tennessee and was subsequently present in Tennessee"; and (3) the district court erroneously instructed the jury that any image that was transmitted or received over the internet moved in interstate commerce.

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Joseph v. Coyle*, 469 F.3d 441, 464 (6th Cir. 2006) (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). We review an instruction alleged to be faulty on a matter of law de novo and the district court's refusal to give a requested instruction for abuse of discretion. *United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006). "Harmless errors are disregarded." *Id*. (citing FED. R. CRIM. P. 52(a)).

A.

Defendant's first argument – that the court erred by not instructing the jury to find that the child pornography had a "substantial effect" on or "sufficient connection" to interstate commerce

to convict him – is without merit. The decisions upon which he relies[12] undermine, rather than

support, his argument because they relegate the "substantial effect" or "sufficient connection" inquiry

to a purely *legal* determination for the court and not to an issue of fact to be found by a jury. A

defense based upon the government's alleged failure to satisfy the jurisdictional element of the

offense in a particular case is properly asserted as an as-applied *constitutional* challenge to §

2252A(a)(5)(B). *See Corp*, 236 F.3d at 333 (articulating the factors that a *court* should consider

when assessing whether a defendant's possession of child pornography was substantially related to

interstate commerce where the defendant asserted an as-applied Commerce Clause challenge). None

of the cases upon which defendant relies authorize a trial court to delegate its task of determining

the constitutionality of the indictment to a jury. Indeed, it would have been improper for the court

to do so.

B.

Defendant's next argument – that the court improperly "instructed away" the jurisdictional

element when it told the jury that the image moved in interstate commerce if it "was created in a

State other than Tennessee and was subsequently present in Tennessee" – is also unavailing.

Defendant does not contend that this was an inaccurate statement of law. Indeed, it was correct.

Obviously, if an image was "created" in a state other than Tennessee but then was "subsequently

---

[12]*United States v. Corp*, 236 F.3d 325 (6th Cir. 2001); *United States v. Latouf*, 132 F.3d 320 (6th Cir. 1997); *United States v. Salazar*, Nos. 05-1810 & 05-1835, 2006 U.S. App. LEXIS 16324 (6th Cir. June 22, 2006) (unpublished); *United States v. Ray*, 189 F. App'x 436 (6th Cir. 2006) (unpublished); *United States v. Richards*, 401 F. Supp. 2d 834, 843-44 (M.D. Tenn. 2005).

present in Tennessee," it had to, at *some* time, move in interstate commerce. The court properly cautioned the jury that "[i]t is for you to determine, however, . . . if any image of child pornography was created in a State other than Tennessee and was subsequently present in Tennessee." Accordingly, the argument is without merit.

C.

Finally, defendant asserts that the district court's instruction that an image moved in interstate commerce if it was transmitted or received over the internet was an incorrect statement of law. He argues that an image that was transmitted or received over the internet did not *necessarily* move across states or travel in interstate commerce.

Although that issue was the source of much discussion at oral argument, we note that defendant did not argue it before the district court, nor did he discuss it in his appellate briefs. The case upon which defendant relied at oral argument, *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007), was not cited in his initial or reply briefs, even though it was decided well before defendant filed his initial brief in June 2008. The government appeared to be taken by surprise by defendant's last-minute argument. We may thus deem the issue waived. *See* FED. R. APP. P. 28(a)(9)(A) (requiring that the argument in appellant's brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *United States v. Voigt*, 89 F.3d 1050, 1064 n.4 (3d Cir. 1996) (deeming an issue raised for the first time at oral argument and not argued in the appellant's brief waived "because consideration of [it] would vitiate the requirement of the Federal Rules of Appellate Procedure and [the Third

Circuit's] own local rules that, absent extraordinary circumstances, briefs *must* contain statements of all issues presented for appeal, together with supporting arguments and citations") (citation omitted); *United States v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996) (declining to address the defendant's challenge to all six counts on which he was convicted because it was asserted for the first time in his reply brief and "an appellant abandons all issues not raised and argued in its *initial* brief on appeal") (citation and internal quotation marks omitted); *United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995) (refusing to address the appellant's "unsupported" and "[un]developed" arguments which contained no citations to authority because they violated the Federal Rules of Appellate Procedure).

The argument, at any rate, rests on slim support. *Schaefer* recognized that "in many, if not most, situations the use of the Internet will involve the movement of communications or materials between states" but held that "this fact does not suspend the need for evidence of this interstate movement." 501 F.3d at 1201. Yet, *Schaefer* stands alone and has been rejected by every court that has considered the issue. *See United States v. MacEwan*, 445 F.3d 237, 239 (3d Cir. 2006) (holding that "use of the Internet satisfies the interstate commerce element of the federal law prohibiting the receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(B)"), *cert. denied*, 549 U.S. 882 (2006); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) ("We join the First Circuit in holding that 'transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce' for the purposes of 18 U.S.C. § 2251"); *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) (same) (citing *United States*

*v. Thomas*, 74 F.3d 701, 706-07 (6th Cir. 1996)); *United States v. Pomerico*, No. 06 CR 113, 2008 U.S. Dist. LEXIS 77783, at *6 (E.D. N.Y. Oct. 3, 2008) (holding that "[c]ontrary to the opinion expressed by the Tenth Circuit in *Schaefer*, this Court finds that use of the Internet satisfies the interstate commerce element of . . . 18 U.S.C. § 2252A(a)(2)(B)") (internal quotation marks omitted); *United States v. Gouin*, No. CR05-433RSL, 2008 U.S. Dist. LEXIS 33709, at *6-*7 (W.D. Wash. Apr. 24, 2008) (finding "compelling" the testimony of an expert witness about "why the use of the Internet to transmit the visual depictions at issue is inherently part of interstate commerce" and following *MacEwan*).

As the Third Circuit noted in *MacEwan*:

"The Internet is an international network of interconnected computers . . . [and is comparable] to both a vast library including millions of readily available and indexed publications and a sprawling mall offering goods and services." *Reno v. ACLU*, 521 U.S. 844, 850-53 (1997). Moreover, as is evident from the trial testimony of the government's expert, unless monitored by specific equipment, it is almost impossible to know the exact route taken by an Internet user's website connection request, such as [defendant's] requests to connect with various child pornography websites. Because of fluctuations in the volume of Internet traffic and determinations by the systems as to what line constitutes the "Shortest Path First," a website connection request can travel entirely intrastate or partially interstate.

Regardless of the route taken, however, we conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce. Here, once the images of child pornography left the website server and entered the complex global data transmission system that is the Internet, the images were being transmitted in interstate commerce.

445 F.3d at 244.

The Tenth Circuit itself later characterized its holding in *Schaefer* as "limited to its facts – the government's say so was not enough to prove that the Internet operates in interstate commerce, no matter how obvious." *United States v. Vigil*, 523 F.3d 1258, 1266 (10th Cir. 2008). Indeed, in *Gouin*, the district court found it significant that "[i]n *Schaefer*, the prosecution never presented any evidence of where the child victims were located when they were sexually abused and photographed. There was also no evidence that Schaefer downloaded images via computer and placed them on the CDs found in his home." 2008 U.S. Dist. LEXIS 33709, at *9 (internal citation and quotation omitted). The *Gouin* court distinguished *Schaefer*, explaining that "[h]ad the *Schaefer* court been presented with the breadth and depth of the evidence of interstate transportation in this case, the Tenth Circuit would have had no difficulty in affirming Schaefer's conviction." *Id*.

*Schaefer* involved eleven images of child pornography on two CDs. 501 F.3d at 1198. The evidence in this case included *11,000* images and *hundreds* of movies and stories depicting and describing child pornography. Defendant also visited several internet bulletin boards where child pornography was posted. Moreover, unlike in *Schaefer* in which "an investigating agent testified that he had no evidence Mr. Schaefer downloaded images via computer and placed them on CDs found in his home[,]" *id*. at 1199, the forensic evidence in this case overwhelmingly proved that Mellies downloaded the images via his laptop computer and saved them onto numerous CDs found in his home. Further, Texas and Missouri police officers testified at trial that several of the images depicted *known* children who were abused in Waco, Texas, and Kansas City, Missouri, not in Tennessee (where Mellies lived).

Because the evidence in this case overwhelmingly proved that the child pornography traveled in interstate commerce, we hold that the district court did not err in instructing the jury that "any image of child pornography that was transmitted or received over the Internet moved in interstate commerce."

## VI.

Next, defendant challenges his conviction based on the sufficiency of the evidence. We review de novo a district court's denial of a motion under Rule 29 of the Federal Rules of Criminal Procedure[13] based on insufficient evidence and assess the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[14] *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). We "will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id*. Further, all reasonable inferences must be made to support the verdict. *Id*.

Construing the evidence in the light most favorable to the prosecution, the circumstantial evidence established beyond a reasonable doubt that Mellies knowingly possessed child pornography. In fact, we may reasonably infer that he confessed to the crime when he told law

---

[13]Rule 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

[14]Defendant properly moved for judgment of acquittal at the end of the government's proof, which coincided with the close of all evidence.

enforcement after his arrest: "I can tell you this: That I'm not part of some sort of a ring" and that "this is something that doesn't have anything to do with anybody else at all."

The forensic evidence demonstrated that Mellies was the primary, and in fact, the almost *exclusive*, user of the laptop on which the child pornography was discovered and which was linked to the numerous CDs storing it. His fingerprints were found on several of those CDs, while the fingerprints of the only other members of the household – his wife and her son – were not.

Defendant's interest in child pornography was exhaustive. The evidence showed that he amassed, over a period of months or years, 11,000 images and hundreds of videos and stories. Defendant did not dispute that the images and videos of children being sexually abused and tortured were indeed child pornography, and he attempted to so stipulate. He created an elaborate system of directories to organize the fruits of his addiction. He also attempted to conceal his conduct by password-protecting the images and by innocuously naming many of them, thereby demonstrating that he knew that what he was doing was wrong. Apparently, he believed that his interest could be hidden by a damaged laptop computer cord, which he had to hold in place to render the laptop functional. Still, he could not completely eclipse his secret, as numerous images were saved under names that unambiguously referred to sexual activities with children. Nor could he ultimately hide it from his wife, who suspected her husband of possessing pornography (albeit, adult pornography) and therefore searched the house, ultimately finding the CDs containing child pornography behind speakers in her husband's office. She provided the incriminating evidence to the police.

Based on this evidence, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that the district court did not err in denying defendant's Rule 29 motion for judgment of acquittal.[15]

VII.

Defendant also complains that the cumulative effect of the alleged errors made by the district court violated his right to a fair trial. But while he is correct that "trial-level errors that would be considered harmless when viewed in isolation of each other might, when considered cumulatively, require reversal of a conviction," *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004), the converse is also true: "[T]he accumulation of non-errors cannot collectively amount to a violation of due process." *Id*. Because we have determined that each of the issues raised on appeal by defendant is without merit and that the district court made no errors, defendant is entitled to no relief.

VIII.

Finally, defendant challenges his sentence. We review sentences for reasonableness. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). That inquiry requires us to examine the "procedural" and "substantive" reasonableness of the sentence imposed. *Id*.

A.

---

[15]We do not address the evidence relating to the jurisdictional element because defendant did not challenge that element in his appeal of this issue; rather, his briefs merely reiterate his contention that the district court should have instructed the jury that it was required to find that the images had a sufficient connection to interstate commerce, an argument which we already rejected. Moreover, for the reasons already stated, we hold that the evidence was sufficient to satisfy the jurisdictional element.

In *Vowell*, we stated that "[t]he Supreme Court has summed up our review for procedural reasonableness" as follows:

> [T]he appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.

*Vowell*, 516 F.3d at 509-10 (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)).

Defendant contends that the district court procedurally erred by failing to properly calculate the applicable Guidelines range, consider the sentencing factors in 18 U.S.C. § 3553(a), and adequately explain its reasons for imposing the sentence it did.

1.

Mellies argues that the district court miscalculated his Guidelines range by enhancing his sentence based on the allegedly erroneous judge-found fact that he possessed six hundred or more images of child pornography, thereby adding five levels to the base offense level.[16] He complains that the verdict form only required the jury to determine whether he possessed child pornography; it did not elicit a finding about the amount of child pornography. According to defendant, the "competent proof" at trial established that only 71 of the pornographic images involved minors, and Detective Tidwell's opinion that there were approximately 11,000 images of child pornography was inadmissible because the court did not qualify him as an expert in determining the ages of

---

[16]The Guidelines range was determined using the 2003 edition of the United States Sentencing Guidelines Manual.

individuals portrayed in photographs. Finally, Mellies maintains that at the sentencing hearing, there was testimony that only 499 images depicted "known minors" and that up to eighty percent of those images could have been duplicates.

In assessing whether the district court correctly calculated the applicable Guidelines range, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). Post-*Booker*,[17] we have consistently held that "district judges can find the facts necessary to calculate the appropriate Guidelines range." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006). "Where, as here, the district court recognized the advisory nature of the guidelines, the increase in a defendant's sentence based on facts not admitted by the defendant or proven to a jury beyond a reasonable doubt does not violate the Sixth Amendment." *United States v. Conatser*, 514 F.3d 508, 527 (6th Cir. 2008). In fact, the sentencing court may consider even "acquitted conduct" if it finds facts supporting that conduct by a preponderance of the evidence, so long as the sentence resulting from those judge-found facts does not exceed the statutory maximum penalty for the convicted offense.[18] *United States v. White*, 551 F.3d 381, 384-85 (6th Cir. 2008) (en banc).

The district court's factual determination that defendant possessed six hundred or more images of child pornography was not clearly erroneous. The evidence at trial established that there

---

[17]*United States v. Booker*, 543 U.S. 220 (2005).

[18]The maximum sentence of imprisonment for possessing child pornography under § 2252A(a)(5)(B) is ten years. § 2252A(b)(2). Defendant was sentenced to eight years.

were *thousands* of images and almost two hundred videos containing child pornography. In fact, Detective Tidwell testified, and the physical evidence confirmed, that there were approximately 11,000 such images, well beyond the six hundred images necessary to support the five-level Guidelines enhancement.

Defendant provides no basis to support his contention that expert testimony was required to establish that the images were of minors. Significantly, he did not argue at trial that the government was required to produce a so-called "age expert" to testify that the pornographic images depicted children, and in fact, he attempted to *stipulate* that they did. Whether individuals with obviously prepubescent physical features are minors is not the type of "scientific, technical, or other specialized knowledge" requiring expert testimony as contemplated by Rule 702 of the Federal Rules of Evidence. *Cf. United States v. Fuller*, 77 F. App'x 371, 380 (6th Cir. 2003) (unpublished) (holding that lay witness's opinion that the images "appeared to be" live human beings was sufficient to support the jury's finding that the pornographic images were produced using actual minors).

Finally, defendant's argument that the enhancement for six hundred or more images was erroneous because only 499 images were of "known victims" and that up to eighty percent of those images could have been duplicates is unavailing. The government concedes that some images were duplicates. However, even if as many as eighty percent were duplicates, the body of evidence still includes over *two thousand* images and videos, more than enough to justify the maximum

enhancement.[19]

We note that defendant's challenge to the number of pornographic images depicting children is based on pure conjecture. Defendant offered no evidence of his own to establish the number of duplicate images or to rebut the government's proof that there were thousands of images of child pornography. If defendant genuinely believed that the number of duplicate images was so substantial that it would have reduced the quantity of images below the six hundred-image threshold necessary to justify the five-level enhancement, he could have marked all images he thought were duplicates and brought them to the sentencing judge's attention. That he failed to do so is revealing. Having considered the testimony and physical evidence at trial and at the sentencing hearing, the judge was uniquely positioned to draw his own conclusions about the number of pornographic images involving children. *Cf. Fuller*, 77 F. App'x at 380 (deeming it "significant []" that "no contrary evidence was offered to suggest either that any of the visual depictions were computer generated, or that they were not produced using actual minors" and concluding that "the jury was in a position to draw its own conclusions about whether they depicted actual children"); *United States v. Deaton*, 328 F.3d 454, 455-56 (8th Cir. 2003) (holding that a jury's finding that real children were depicted may be upheld even when the only evidence offered was the images themselves); *United States v.*

---

[19]Defendant mischaracterizes the testimony of FBI Special Agent Hemmersmeier when he asserts that Hemmersmeier admitted that "possibly up to eighty percent are duplicates." When defense counsel asked whether "[t]here was a huge number that were exact duplicates," Hemmersmeier responded, "My understanding was there were *some* duplicates" but testified that he did not know how many were duplicates. (Emphasis added.) It was defense counsel, not Hemmersmeier, who suggested in his leading question that "[i]t could have been 80 percent as far as you know?"

*Vig*, 167 F.3d 443, 449-50 (8th Cir. 1999) (holding that where defendant simply argues that images

may or may not be of real children, the government is not required to negate as part of its proofs the

unsupported speculation).[20]

Because the district court's factual finding that defendant possessed six hundred or more

images of child pornography was not clearly erroneous, defendant's challenge to its calculated

Guidelines range on that basis is without merit.

2.

Defendant also contends that his sentence was procedurally unreasonable because the district

court failed to consider the 18 U.S.C. § 3553(a) sentencing factors[21] and adequately explain its

---

[20]Significantly, the district judge noted that because the 2003 edition of the Sentencing Guidelines Manual did not address the vast quantity of images attributable to defendant, the five-level enhancement "substantially *under-represent*[*ed*] the number of minors depicted" and suggested that "an upward departure may be warranted." (Emphasis added.) Defendant is fortunate that the district judge rejected that possibility.

[21]18 U.S.C. § 3553(a) requires that the court consider the following factors in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

reasons for imposing the sentence it did.

"In order for an appellate court to effectively review the reasonableness of the sentence, there must be an adequate explanation of the district court's reasons for imposing the sentence." *United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005). We have held that the district court "need not explicitly reference each of the sentencing factors of § 3553(a)" when imposing sentence. *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008). Instead, "there must be sufficient evidence in the record to affirmatively demonstrate" that the court considered them. *Id.* (quoting *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006)). Stated differently, we "require some demonstration that the court analyzed the § 3553(a) factors in relation to this particular defendant and some evidence of a descriptive link between the defendant and the sentence imposed." *United States v. Mitchell*, 232 F. App'x 513, 521 (6th Cir. 2007) (unpublished).

Prior to the sentencing hearing, the United States Probation Office provided the district judge

---

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range . . .;

(5) any pertinent policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

with a comprehensive presentence investigation report ("PSR") containing detailed information about Mellies's history, the circumstances surrounding the crime of which he was convicted, and the probation officer's recommended sentence. An addendum to the PSR outlined the parties' objections and the probation officer's response to those objections. Both parties also filed sentencing memoranda which set forth their respective positions about the appropriate sentence.

The sentencing hearing itself was not cursory; rather, extensive testimony and argument was heard about the amount of child pornography, the history and characteristics of defendant as reported by three defense witnesses, including an examining psychiatrist, defendant's wife, and sister. The court then heard defendant's objections to the PSR. It also heard his arguments for a downward departure and the government's arguments for an upward departure.

We find it significant that the sentencing judge also presided over the jury trial. The judge appropriately remarked twice at the sentencing hearing that he was "fully familiar with" the facts in the case. He also stated that "I am satisfied that this is a case within the heartland." After denying the motions for upward and downward departures, the court made key findings:

> With respect to the argument of abhorrent behavior, I reject that argument . . . . This offense occurred over a period of time, repeated actions in downloading these images. And there are an extraordinary number of images, and all this business of child pornography is proscribed – the possession of it is proscribed conduct by the Congress. The fact that there is a consumer of this material, such as Mr. Mellies, is what puts the children who are the victims at risk. If there wasn't a market for it and a consumer such as Mr. Mellies, the likelihood of the extensive distribution of this proscribed material would be greatly reduced.

* * *

> This involves criminal conduct that occurred over . . . at least six months, if not longer.

Thereafter, the court heard further arguments from both parties about the appropriate sentence and adopted the PSR with one exception. After articulating the applicable Guidelines determinations, the court unambiguously confirmed that it

> considered the provisions of Title 18 United States Code Section 3553. It's fully familiar with the circumstances of the case, the characteristics of the Defendant, and the Court has considered all the other required provisions of Section 3553 with regard to tailoring a sentence that is appropriate to the case and the Defendant.
>
> And the Court is also conscious of the fact that the Guideline provisions are to be treated in an advisory capacity.

After imposing sentence, the court explained that "[t]he sentence is imposed for the purposes of punishment, deterrence, and treatment."

Based on this record, we hold that the district court properly considered the § 3553(a) factors and adequately explained its reasons for imposing the sentence it did.

## B.

Defendant also contends that his sentence is substantively unreasonable. "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007) (internal quotations and citations omitted). Where, as here, the sentence is held to be procedurally sound, "a challenge to the substantive reasonableness of a sentence is reviewed for abuse of discretion."

*United States v. Olds*, No. 07-4147, 2009 U.S. App. LEXIS 2227, at \*19 (6th Cir. Feb. 6, 2009) (unpublished) (citing *Gall*, 128 S. Ct. at 598).

As grounds for his challenge to the substantive reasonableness of his sentence, defendant merely reiterates his previous contention that the sentencing judge impermissibly based his sentence on facts not determined by the jury. For the reasons already stated, that argument is meritless.

Defendant also protests the district court's denial of his motion for a downward departure. However, he correctly concedes that a denial of a motion for downward departure is unreviewable on appeal where, as here, the district court was aware of its discretion to depart downward and decided against it. *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008).

Finally, defendant argues that the § 3553(a) factors weigh in favor of a lesser sentence. However, we afford a within-Guidelines sentence, such as the sentence defendant Mellies received, a presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc), *cert. denied*, 129 S. Ct. 68 (2008). Defendant has failed to rebut that presumption.

Accordingly, we hold that the district court did not abuse its discretion in sentencing Mellies to 96 months of imprisonment for possessing over 11,000 images and almost 200 videos of child pornography.

IX.

For the reasons stated, we affirm.